AMBROSE W. HATHAWAY & others *vs.* PHILIP H. EVANS.

The refusal of the presiding judge to reopen a case for additional testimony, after it has been formally closed by both parties, is not a subject of exceptions.

An ancient line of division between lots of land, located and marked on the earth by the adjoining proprietors, and afterwards recognized and acted upon by them as the true line, will fix the boundary between the lots, although it varies from the course described in the original deeds.

TORT for breaking and entering the plaintiffs' close in Fall River and cutting wood thereon. Trial and verdict for the plaintiffs in the superior court, before *Scudder*, J., who allowed a bill of exceptions, of which the following are the material parts:

" The question was as to the true line of division between two adjoining lots of woodland, which was the line between the twelfth and thirteenth lots in a laying out in the Freeman's Purchase, more than one hundred years ago. The entire line between these lots was about four miles in length ; and the *locus in quo* was situated on the eastern part of it. Certain monuments on the western part of the line were not in controversy.

" The defendant contended, and introduced evidence tending to show, that all the lines in the original laying out were straight and parallel; and that the line of the *locus,* as claimed by him, coincided with a line extended east in continuation of that indicated by the undisputed monuments on the western end of the line, was parallel to the lines between the other lots in the Freeman's Purchase in which the *locus* was included, was a straight line, was marked by certain alleged ancient monuments, and gave to the plaintiffs' lot all and more than the width which the original laying out called for. The plaintiffs admitted that the lines were intended to be straight and parallel ; but contended that the line in controversy had originally been varied from an exact straight line on the eastern portion thereof, and was run out and marked by certain monuments, which they alleged to be ancient monuments of the original lay out ; " and introduced evidence tending to show that these monuments " were placed there by the parties in interest and had existed for a time beyond the memory of any living witness." The plaintiffs also put in evidence which tended to show that the defendant had assented to these monuments as marking the true line of division between the lots. There was much other conflicting testimony, but it is unnecessary to state it.

After both parties had announced that their evidence was closed, the defendant stated to the court that he had just learned of a certain plan relating to the boundaries in dispute, which was in the plaintiffs' possession, and called upon them to produce it, and upon its production offered it in evidence ; but the plaintiffs objected to its admission at that stage of the case, and the judge excluded it.

The defendant requested the following instructions to the jury:

"1. That, inasmuch as the line of the *locus* was but part of a much longer line between the lands of the plaintiffs and the defendant, the jury should take into account, in determining whether the line claimed by the plaintiffs was the true line, how it agreed with the remainder of the line and the monuments as claimed by the plaintiffs and the defendant respectively.

"2. That monuments can only govern where they are clear and settled, and not where there is a dispute about the monuments themselves, and whether or not they are in the right place.

"3. That there was no evidence in the case to authorize the jury to find that the monuments claimed by the plaintiffs were erected with the knowledge or assent of the defendant, or those under whom he claims, or any person authorized by them; or that there had been any such occupation of the *locus* up to the bounds claimed by the plaintiffs, with the knowledge or assent of the defendant, or his grantors, as to establish them against the defendant or his grantors.

"4. That, if said monuments were erected by the adjoining owners or their duly authorized agents in order to mark the true division line, but a mistake was made by either or both as to that line, still there had been no such occupation up to said monuments as to estop either party from claiming to the true line, and they may do so."

The judge gave the first and second of these instructions, but declined to give the third and fourth, and instructed the jury "that upon all the testimony in the case they were to inquire where the true line of division between the lands of the parties was in fact, and that if they found that the line between the lots in question had been run out, located and marked upon the earth by the parties in interest many years ago, and afterwards recognized and acted upon by them as the true line, that line must be regarded as the true line, though it may have been subsequently ascertained that it varies from the course as now run out from the original laying out."

*J. M. Morton, Jr., & N. Hathaway*, for the defendant.

*G. Marston & J. C. Blaisdell*, for the plaintiffs.

AMES, J. 1. The admission or rejection of the plan, at the time when it was offered, was a matter wholly within the discretion of the presiding judge, and is not subject to the revision of this court. *Morse* v. *Potter*, 4 Gray, 292. *Carruth* v. *Bayley*, 14 Allen, 532.

2. There was conflicting evidence as to the matters embraced in the third and fourth propositions which the defendant requested the court to adopt in its instructions to the jury. The court could not have instructed the jury as requested, without assuming the decision of controverted matters of fact. The instructions actually given were correct and appropriate, and were all that the case required. *Kellogg* v. *Smith*, 7 Cush. 375. It was a question of fact as to an ancient line, located and marked upon the earth by the parties in interest, recognized and acted upon, for many years, as the true line. *Exceptions overruled.*