WILLIAM BECKMAN *vs.* MARY J. DAVIDSON.

Plymouth.    October 16, 1894. — November 27, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Writ of Entry — Boundary — Disseisin — Adverse Possession.*

At the trial of a writ of entry, brought in 1893, the tenant traced his title back to a deed to B. dated in 1831, giving the northern boundary of the land conveyed as A.'s land, and providing that B., his heirs and assigns, were "to support all the fence around said land"; and the deed under which the demandant claimed described his land as beginning "at the southerly corner of B.'s land" on the road, and made B.'s land his northerly boundary. There was evidence tending to show that the fence between the respective lots of the parties, which were adjacent to each other on the same street, stood where a very ancient fence stood; and the judge, who heard the case without a jury, found that from 1854 to the time of the trial a fence had been maintained in the line of the present fence, and that during that period the several owners of the B. lot had "openly and continuously held possession under a claim of right, and adversely, of the land northerly of and up to the line of said fence, including the demanded premises." The tenant became the owner also of the land formerly owned by A.; and a survey showed that the measurements on the road and in the rear given in the deed to B., added to the measurements on the road and in the rear given in the deed of A.'s land referred to in the description of the B. lot, were together about six feet less than the actual measurements of the lines of these two lots as occupied by the tenant. The evidence tended to show that this land was

formerly of little value, rough, uneven, covered in part with bushes and difficult of measurement. *Held*, that the judge properly found that the fence was the line of ownership between the parties; and that judgment was rightly ordered for the tenant.

If an ancient deed of land provides that the grantee is "to support all the fence around said land," and a fence is erected by agreement of the parties in occupation of that and the adjoining land at or about that time, as and for a monument contemplated by the deed, and is so erected without fraud or mistake, and afterwards acted upon by them, a slight variation from mathematical accuracy in fixing its position will not affect its conclusiveness as a boundary.

If the grantee in a deed of land, providing that he is "to support all the fence around said land," and his successors in title for more than twenty years occupy continuously up to a fence which was on the land at the date of the deed, or was erected there about that time, as a boundary of the lot described in the deed, but which is found by a survey to have been placed six feet beyond the line of such land, the seisin of such grantee will pass by his conveyance of the land, even though the language of the description is the same as that in the deed to him; and a subsequent grantee is entitled to invoke the continuous possession of his predecessors in title to establish a title to the strip of six feet by disseisin and adverse possession.

WRIT OF ENTRY, dated October 25, 1893, to recover a parcel of land in Plymouth. Plea, *nul disseisin*. Trial in the Superior Court, without a jury, before *Bishop*, J., who found for the tenant; and the demandant alleged exceptions. The facts appear in the opinion.

*C. G. Davis*, for the demandant.

*D. E. Damon*, for the tenant.

KNOWLTON, J. The question in dispute in this case is where is the boundary line between the two lots owned by the demandant and the tenant respectively, which are adjacent to each other on the easterly side of the same street. The tenant traces her title back to a deed to Jane Burgess, dated June 25, 1831, conveying "a certain house lot in Plymouth aforesaid, at Hobb's Hole, so called, bounded as follows : beginning at the westerly corner by road, thence north forty-two degrees east one hundred and forty-six feet by Joseph Whiting's land to his corner, bounded thence south thirty-seven degrees east sixty-eight feet, thence south forty-two degrees west to the road, thence by road to the bounds first mentioned, with all the privileges to the same belonging, said Jane Burgess, her heirs and assigns, to support all the fence around said land." The demandant's land is the next southerly of this, and the deeds under which he claims describe his land as beginning "at the southerly corner

of Jane Burgess's land" on the road, and make Jane Burgess's land his northerly boundary. The tenant contends that the boundary line is a fence now standing on the land, and the demandant contends that his lot extends about six feet beyond the line of the fence. There was evidence tending to show that this fence stands where a very ancient fence stood, and the judge who heard the case without a jury found "that from the year 1854 to the present time a fence has been maintained in the line of the fence relied upon by the tenant, and that the several owners of the Jane Burgess lot have openly and continuously held possession under a claim of right, and adversely, of the land northerly of and up to the line of said fence, including the demanded premises, during said period to the present time." A survey shows that the measurements on the road and in the rear given in the deed to Jane Burgess, added to the measurements on the road and in the rear given in the deed of Joseph Whiting's land, referred to in the description of the Burgess lot, are together about six feet less than the actual measurements of the lines of these two lots as they are now occupied by the tenant, who has become the owner of both of them. The demandant therefore contends that the true southerly line of the tenant's lot is about six feet northerly of the fence.

In the first place the evidence tends to show that this land was formerly of little value, rough, uneven, covered in part with bushes, and difficult of measurement. Under these circumstances it is not improbable that the monuments which marked the southerly line of the Whiting lot were set a little farther south than an accurate measurement would have placed them, thus giving a different starting point for the line of the Burgess lot from that contended for by the demandant. But in the absence of evidence on this point the judge properly found that the boundary was as fixed by the exact measurement. Very likely the measurement by which the monuments of the Burgess lot were originally fixed was favorable to the grantee, and it is not strange that the lines of the two lots together should exceed by six feet the distance called for by the ancient deeds. The deed to Burgess refers to no monument in terms on the southerly side, but provides that the grantee is "to support all the fence around said land." This is equivalent to a statement, either that there was then a fence around the land which, as a monu-

ment, would mark its boundaries, or that a fence was to be erected on the line, which would then become a monument. The evidence in regard to the ancient fence and the conduct of the parties in occupation was sufficient to warrant a finding that this fence was erected by agreement of the parties, at or about that time, as and for a monument contemplated by the deed, and if it was so erected without fraud or mistake, and afterward acted upon by them, a slight variation from mathematical accuracy in fixing its position would not affect its conclusiveness as a boundary. *Owen* v. *Bartholomew*, 9 Pick. 520. *Blaney* v. *Rice*, 20 Pick. 62. *Kellogg* v. *Smith*, 7 Cush. 375. *Stevenson* v. *Erskine*, 99 Mass. 367. *Hathaway* v. *Evans*, 108 Mass. 267. *Coyle* v. *Cleary*, 116 Mass. 208. *Miles* v. *Barrows*, 122 Mass. 579. *Lovejoy* v. *Lovett*, 124 Mass. 270. *Dodd* v. *Witt*, 139 Mass. 63. *Hooten* v. *Comerford*, 152 Mass. 591.

So too the evidence well warranted a finding for the tenant on the distinct ground that she had acquired a title by disseisin and adverse possession for a period of more than twenty years. Assuming, as we must do, that Jane Burgess and her successors in the title occupied continuously up to the fence as a boundary of the lot described in her deed, her seisin would pass by her conveyance of the lot, even though the language of the description was the same as that in the deed to her, and it passed through mesne conveyances to the tenant, who thus is enabled to invoke the continuous possession of her predecessor in title. There was evidence to warrant all the findings of fact, and under those findings the rulings requested were rightly refused.*

*Exceptions overruled.*

---

* In addition to the finding recited in the opinion, the judge found the following facts:

"From the year 1854, during the life of Jane Burgess and the life of her daughter Ruth Burgess, who took by inheritance from her, until the foreclosure of mortgage by Solomon J. Gordon, [the sole heir at law of Timothy Gordon, to whom, on May 1, 1861, Jane Burgess mortgaged the premises in question,] a period of more than twenty years, said Jane Burgess and Ruth Burgess held open, adverse, and continuous possession under a claim of right of the demanded premises up to the division line of fence claimed by the tenant.

"The demandant's premises, according to the description in the deed to him and the deeds under which he claims, as properly located by survey, do not extend northerly beyond the line of said fence.

"The northwesterly line of the Jane Burgess lot is a line thirty feet from

and running parallel to Jeannette Manter's land," which land, by the deed to the tenant, was made her northerly boundary.

The rulings requested by the demandant, which were refused as not applicable to the facts found by the judge, were as follows:

" The grantee under the deeds from Jane Burgess or her assigns can sustain no claim of title beyond the limits of the estate granted.

" No land can be granted as appurtenant to land granted.

" If said Jane Burgess or assigns ever acquired by prescription any land southerly of the estate conveyed by her or them under the Gordon mortgage, they have still the title, unless by other instruments it has been conveyed to the demandant.

" The deeds from Jane Burgess or the persons who became grantors under her, made within twenty years previous to the commencement of this suit, are conclusive as matter of law to show that no title was claimed by the grantors of her land to the tenant or his grantors in the land in controversy.

" The tenant is estopped from title to the same."