EDGAR M. BOND *vs.* JOHN O'GARA.

Worcester.　　October 3, 1900. — October 31, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*License — Disseisin.*

If land, after it is conveyed, continues to be occupied by one who was in by license from the grantor and who does not know of the conveyance, the running of twenty years will not bar the grantee.

WRIT OF ENTRY, to recover a tract of land situated in Leicester. Plea, general issue. Trial in the Superior Court, before *Gaskill*, J., who allowed a bill of exceptions, in substance as follows.

The demandant claimed title through a deed to him on the premises by one Lanphear, dated March 11, 1899. Lanphear's title came from a deed dated January 5, 1899, also delivered on the land, to him, by Kate Hanlon and her children, being the children and heirs of her deceased husband, John Hanlon. The tenant claimed title through a lease from the heirs of one Olney, deceased, dated December 9, 1898. The paper title was shown to be in the heirs of Olney by a series of conveyances beginning with the deed of one Burr to Buchanan, June 4, 1863. The demandant claimed that John Hanlon or his widow, Kate Hanlon, or his heirs who signed the deed to Lanphear, had acquired a title to the premises by possession for twenty years.

There was evidence tending to show that John Hanlon entered upon the premises about the year 1864, cut the wood and timber, and thereafter occupied the same for a garden and for pasturing his cow and for other purposes, the evidence tending to show that this occupation was exclusive and continuous. There was evidence tending to show that John Hanlon entered

upon the premises either in pursuance of a verbal gift of the land to him by Samuel L. Hodges, or by a permission to occupy the same granted to him by Hodges, who became owner of the premises by a deed from Patrick Hanover, dated October 30, 1865, and Hodges conveyed the same to one Gilbert and others on October 19, 1866. John Hanlon died in 1873, and thereupon his widow continued to occupy the premises in the way in which her husband had done, and in the way in which she occupied the adjoining farm, the title to which was in John Hanlon at the time of his death. Some of her children, the heirs of John Hanlon, lived with her and worked on the premises in question. The evidence tended to show that this occupation of John Hanlon during his life and that of Kate Hanlon was open and continuous and exclusive, and the principal question in controversy was whether the occupation was under a claim of right or under a license or permission from Hodges. Kate Hanlon testified, and some of her children testified, and there was evidence tending to show that the occupation was under the claim that Samuel L. Hodges had given the land to John Hanlon, and that Kate claimed to occupy it as her own because Hodges had given it to her husband.

This evidence was controverted by the tenant, who put in evidence that said Kate Hanlon had stated that Hodges had given to her husband and herself the right to occupy the premises and the right to cut the grass, etc. The deeds from Burr to Buchanan, from Buchanan to Hanover, and from Hanover to Hodges, reserved a right to the Leicester Reservoir Company, whose pond bordered on the premises, to take material for its dam from the premises; and there was evidence that an employee of the Leicester Reservoir Company had crossed the premises and had torn down a fence within twenty years, which had been put up by Kate Hanlon, and that thereupon Kate Hanlon had restored the fence. After the employee had torn it down the second time she left an opening where he could go through, and thereafter the fence was left undisturbed.

There was no evidence, except such as may be inferred from the evidence herein stated, that any of the owners of the paper title of the land, except Hodges, had ever given any license or permission, or had any knowledge of any license or permission,

to John Hanlon or Kate Hanlon, or the heirs of John Hanlon, to occupy the premises.

The demandant asked the judge to instruct the jury as follows: 1. If the owner of the land verbally gave the land to John Hanlon, and thereupon Hanlon entered on the premises and occupied them continuously till his death, claiming to own them, and was not interfered with in said occupation, and immediately upon his death his widow continued to occupy the same continuously in the same way, and the whole period of such continuous occupation amounted to twenty years, the jury would be authorized to find that the title was in Mrs. Hanlon, or in her and the heirs at law of said John Hanlon, and that the title passed to the demandant by virtue of deeds which were annexed as exhibits A and B. 2. If the occupation of Mrs. Hanlon has been sufficient to give a title, under the rules of law given you, but for some license or permission which might qualify such occupation, then the said license or permission must appear to be a license or permission granted by the owner before or at the time the occupation is going on, or in force during the time of such occupation. 3. Any license or permission given by Hodges during his ownership is, in itself, of no legal importance, as affecting occupancy by Mrs. Hanlon subsequent to the date when he parted with his title, and it could have no force in this case, unless there is evidence that the grantees of Hodges, while owners, renewed or adopted, or in some way intentionally continued or revived, such license or permission. 4. If the occupation of Mrs. Hanlon of the premises in question for twenty years was such that the real owner of the premises could have sued her for trespass for such occupation, then said occupation was adverse within the meaning of the law. 5. On the evidence in the present case the occupation by Mrs. Hanlon of the premises in question, cultivating the same, cutting the hay and grass on the same, and pasturing her cow thereon, was such occupation as would support an action of trespass on the part of the owner of the estate, in the absence of any license or permission given by the person who owned the premises at the time of said occupation.

The judge refused to give the instructions in the form requested, but after general instructions as to adverse possession

instructed the jury, in substance, that if Hanlon's occupancy was not by gift, but by permission only, he did not acquire any right against the owner of the land; that the right of Hodges to continue that permission ceased, as matter of law, with the deed given by him on October 19, 1866; that if Hanlon, wife or children, continued to occupy on the belief that the permission continued, no right could be acquired, but that if the occupancy was on the belief that the land was theirs, and continued twenty years uninterruptedly, being adverse and open, a title would be acquired. He further instructed them that, if the first occupation by the father was adverse and the children continued their occupation, they could add the time of their occupation, if they claimed title, to that of their father, but, if not, then, if the mother's belief was that Hodges had given the land to her husband, her uninterrupted occupation for twenty years, if adverse and open, would give a good title; and that if the occupation by Mrs. Hanlon or the heirs was exclusive, except as to the right reserved to the Leicester Reservoir Company, it was sufficient, because that right was reserved by the deed and exercised thereunder.

The demandant excepted to the refusal to give the instructions prayed for, and to the actual instructions given so far as they differed from the instructions prayed for.

The jury returned a verdict for the tenant; and the demandant alleged exceptions.

*F. P. Goulding*, (*W. C. Mellish* with him,) for the demandant.

*H. Parker*, for the tenant.

HOLMES, C. J. This is a writ of entry. The demandant claims title under a deed from the widow and heirs of one John Hanlon, setting up a title in them by the running of the statute of limitations. There was evidence that the holding of John Hanlon and his widow and heirs had been under a claim of right adverse to all the world. There was also evidence that their occupancy had been under a license from one Hodges, who owned the land after October, 1865, and conveyed it in October, 1866. The question raised by the demandant's bill of exceptions is whether the fact that the license was ended in 1866 by the conveyance of Hodges necessarily made the occupation by the Hanlons adverse, if they supposed the license still to be in

operation and purported to occupy under it, but were in such relations to the land that they would have been liable to an action of trespass, or, better to test the matter, to a writ of entry at the election of the true owner.

The answer is plain. "If a man enter into possession, under a supposition of a lawful limited right, as under a lease, which turns out to be void, . . . if he be a disseisor at all, it is only at the election of the disseisee. . . . If the party claim only a limited estate, and not a fee, the law will not, contrary to his intentions, enlarge it to a fee." *Ricard* v. *Williams,* 7 Wheat. 59, 107, 108. *Blunden* v. *Baugh,* Cro. Car. 302, 303. Stearns, Real Actions, (2d ed.) 6, 17.

It is true, of course, that a man's belief may be immaterial as such. Probably, although the courts have not been unanimous upon the point, he will not be the less a disseisor or be prevented from acquiring a title by lapse of time because his occupation of a strip of land is under the belief that it is embraced in his deed. His claim is not limited by his belief. Or, to put it in another way, the direction of the claim to an object identified by the senses as the thing claimed overrides the inconsistent attempt to direct it also in conformity to the deed, just as a similar identification when a pistol shot is fired or a conveyance is made overrides the inconsistent belief that the person aimed at or the grantee is some one else. *Hathaway* v. *Evans,* 108 Mass. 267. *Beckman* v. *Davidson,* 162 Mass. 347, 350. See Sedgwick & Wait, Trial of Title to Land, (2d ed.) § 757. So, knowledge that a man's title is bad will not prevent his getting a good one in twenty years. *Warren* v. *Bowdran,* 156 Mass. 280, 282.

In the cases supposed the mistaken belief does not interfere with the claim of a fee. But when the belief carries with it a corresponding limitation of claim the statute cannot run, because there is no disseisin except the fictitious one which the owner may be entitled to force upon the occupant for the sake of a remedy. *Hoban* v. *Cable,* 102 Mich. 206, 213. Liability to a writ of entry and disseisin are not convertible terms in any other sense. It is elementary law that adverse possession which will ripen into a title must be under a claim of right, (*Harvey* v. *Tyler,* 2 Wall. 328, 349,) or, as it has been thought more accu-

rate to say, "with an intention to appropriate and hold the same as owner, and to the exclusion, rightfully or wrongfully, of every one else." Sedgwick & Wait, Trial of Title to Land, (2d ed.) § 576. "As Co. Lit. 153 *b* defines, 'a *disseisin* is when one enters, intending to usurp the possession, and to oust another of his freehold'; and therefore *quaerendum est a judice, quo animo hoc fecerit,* why he entered and intruded." *Blunden* v. *Baugh,* Cro. Car. 302, 303.

The other matters apparent on the bill of exceptions were sufficiently dealt with by the judge.

*Exceptions overruled.*