JOHN C. GRAY & another, trustees, *vs.* THOMAS J. KELLEY.

Norfolk. November 23, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Witness,* Examination. *Discretion of Court. Boundary. Adverse Possession. Evidence,* Declarations of deceased persons.

A presiding judge may in his discretion allow leading questions to be put to a witness on his direct examination.

It is a proper exercise of the discretion of a presiding judge to allow leading questions to be put on direct examination to a very aged witness whose recollection appears to have been exhausted by the general questions previously put to him.

In an action or proceeding where a boundary line is in dispute, a party who contends that his land extends to a certain stone wall, including a long triangle or wedge of land adjoining the wall claimed by him to have been acquired by adverse possession, there being evidence that the line fixed by the deeds is on one side of the wall at one end and on the other side at the other end, may show by a witness, who was employed to build the wall forty years before the trial by the predecessor in title of the opposing party, that he was ordered by his employer to throw out the three cornered piece and have the wall run straight as the boundary line, and that while building the wall he saw the predecessor in title of the party calling him as a witness, who said he was glad the wall was going to be built straight, and later said to him while he was building the wall, "Well, we will give and take. If there is any chance to give and take, we will give and take," the evidence being competent both at common law to show a boundary line assented to by the adjoining proprietors, each giving and taking land, in connection with evidence of subsequent occupation for more than twenty years in accordance with the line thus adopted, and also as a declaration of a deceased person under R. L. c. 175, § 66, showing the assent of the declarant to what was being done.

SHELDON, J. This is a petition for the registration of title to a triangular strip of land bounded on the north by a stone wall which is claimed by the petitioners to be wholly on their land; on the east by the petitioners' land; and on the south by land

of the respondent. The westerly apex of the triangle is on the easterly side of a private way; and the triangle includes a strip of land running southeasterly from this apex something over two hundred and fourteen feet, and fifteen feet wide on its easterly side. This triangle and the surrounding land are shown on the following reduced copy of a plan annexed to the bill of exceptions.

The petitioners took their title under a deed from Simon Warren to John L. Gardner, dated June 7, 1862, which it is admitted conveyed the land lying on the north of the triangular strip in question; and the respondent derived his title under a deed from Louisa Warren to John W. Warren, dated March 1, 1856, which it is admitted conveyed the land lying south of this triangle. The petitioners contend that the premises conveyed by Simon Warren to Mr. Gardner included the whole of this triangle;

but the respondent denies this, though admitting that they did include a large part of it. The respondent claims title to the strip by adverse possession of John W. Warren and his successors in title.

At the trial in the Superior Court, on appeal from the Land Court, four issues were submitted to the jury, as follows:

"First. Does the westerly end of the wall mentioned in the petition coincide with the westerly end of the boundary line between land of the petitioners and land of the respondent as shown by their respective record titles?

"Second. If the westerly end of said wall does not coincide with the westerly end of said boundary line, how far is the westerly end of said wall north or south of the westerly end of the boundary line between land of the petitioners and land of the respondent as shown by their respective record titles measuring on the easterly line of the passageway mentioned in the petition?

"Third. Have John W. Warren and his successors in title used and occupied the whole or any part of the land described in the petition openly, and not permissively, but adversely, exclusively and under claim of right, continuously for more than twenty years without a break, or an abandonment of, or a withdrawal from such possession, and without interruption or interference by John L. Gardner or his successors in title?

"Fourth. If the whole or any part of said land has [not] been so used and occupied, how much of said land has been so used and occupied?"

The jury answered the first issue "No," and the third "Yes." In answer to the second and fourth issues they found that the westerly end of the stone wall was four feet south of the boundary line as shown by the record titles, and that the adverse possession mentioned in the third issue included the whole of the land in dispute; and the case now comes before us on the petitioners' exception to the admission of certain evidence offered by the respondent.

A witness called by the respondent testified that over forty years ago, while employed by Mr. Gardner, under whom the petitioners took their title, he built this wall under orders from Mr. Gardner, who told him to throw out the three cornered

piece and have the wall run straight as the boundary line. He then testified that while building this wall he saw John W. Warren, who then owned the respondent's land, "right in front of where this wall was built," and that Mr. Warren said he was glad the wall was going to be built straight. He further testified, under the petitioners' exception, that when they were talking one day about the line and when they were building the wall, Mr. Warren said, "Well, we will give and take. If there is any chance to give and take, we will give and take." Mr. Warren was dead at the time of the trial.

The petitioners' first ground of objection was that this testimony was given in answer to leading questions. But the witness was a very aged man, and his recollection appeared to have been exhausted by the general questions which had been previously put. Moreover the presiding judge had the right, in his discretion, to allow leading questions to be put, even in direct examination. *Commonwealth* v. *Meserve*, 154 Mass. 64, 68.

It is also argued that this testimony was irrelevant because it merely expressed Mr. Warren's willingness or desire to exchange in the future and had no tendency to show that subsequently an actual exchange was made. But we think that the jury had a right to find that the words "we will give and take" did not refer to any exchange to be made in the future, but expressed a present willingness to adopt the exchange offered by Mr. Gardner in building this wall as the boundary line in such a location as, if it were adopted, would bring about an exchange of land at one end of the wall for land at its other end, as the jury by their answers to the first and second issues have found was the case. If Mr. Gardner did build the wall in such a situation as to produce this result, and if Mr. Warren did express a present assent to the means adopted, so that each actually assented to a parol gift to the other of such portion of his own land as lay on the other's side of the new boundary line thus adopted, it is of course true that no title would pass by the mere force of such an agreement. *Iverson* v. *Swan*, 169 Mass. 582. *Hall* v. *Eaton*, 139 Mass. 217. *Proctor* v. *Putnam Machine Co.* 137 Mass. 159, 162. *Proprietors of Liverpool Wharf* v. *Prescott*, 7 Allen, 494. But an occupation according to the line thus adopted, if adverse and under a claim of right, and if

sufficiently long continued, would effect a change of title. *Proctor* v. *Putnam Machine Co.*, *ubi supra*. *Beckman* v. *Davidson*, 162 Mass. 347, 450. *Wheeler* v. *Laird*, 147 Mass. 421.

Accordingly we think that this testimony was competent to show the condition at that time of Mr. Warren's mind; that he then understood that the situation of this wall as Mr. Gardner was building it did not coincide with the boundary line as fixed by the deeds; that he assented to its being so built, and that by adopting it as the boundary between the parties he and Mr. Gardner were giving and taking land accordingly. *Inness* v. *Boston, Revere Beach & Lynn Railroad*, 168 Mass. 433. *Commonwealth* v. *Crowley*, 165 Mass. 569. *Sturbridge* v. *Franklin*, 160 Mass. 149, 151, 152. *Commonwealth* v. *Trefethen*, 157 Mass. 180. *Motte* v. *Alger*, 15 Gray, 322. *Ashley* v. *Ashley*, 4 Gray, 197.

We think also that evidence of these statements was competent under R. L. c. 175, § 66, Mr. Warren being dead. The presiding judge had a right to find that the statements were not declarations as to something to be done in the future, but that they indicated his present consent to what was being done and to the giving and taking of land that naturally followed therefrom; that they were made in good faith and upon personal knowledge before the action on trial was begun. This was enough to warrant the admission. *George* v. *George*, 186 Mass. 75. *Stone* v. *Commonwealth*, 181 Mass. 438.

The other exception taken by the petitioners was not insisted upon at the argument.

*Exceptions overruled.*

*R. A. Jackson*, for the petitioners.

*W. H. White & T. W. Proctor*, for the defendant, were not called upon.