WILLIAM ENDICOTT, Jr., & another, trustees, *vs.* PHILIP F. HAVI-
LAND & another.

Norfolk.     December 7, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Adverse Possession.   Limitations, Statute of.*

If one is put in possession of land under an oral agreement that when he has per-
formed certain services he shall be given a deed of the land, and after having
performed the services demands the deed, which at first is promised and later
is refused, and if this person thereafter continues to occupy the land for more
than twenty years, continuously asserting his right of possession and his right
to receive a deed, his possession is adverse and he has established a title by
limitation against the holder of the record title.

If one is in possession of land under an oral agreement for its conveyance to him
upon the performance by him of certain services, which he has performed, and
has demanded a deed which has been refused, so that his possession has become
adverse to the holder of the record title, and if the holder of that title attempts
to eject him, and he resists successfully and brings a suit in equity against such
holder of the record title to enjoin the threatened eviction, asking also for the
specific performance of the agreement to give him a deed, and this suit is dis-
missed, but he continues his possession under a claim of right, the bringing of
the suit in which he has asserted his right of possession, does not interrupt the
period of his adverse possession or stop the running of the statute of limitations.

WRIT OF ENTRY, to recover certain real estate in the town of
Weymouth, dated August 15, 1911.

The tenants' answer set up a title acquired by adverse posses-
sion for more than twenty years.

In the Land Court the case was tried before *Davis,* J., who found
the following facts:

In 1872 the demanded premises were owned by Mrs. Ann
Weston, for whom and whose family the tenants' mother, Mrs.
Mary A. Haviland, had for many years worked as a seamstress.
Mrs. Haviland had lived in a house owned by Mrs. Weston.
In 1872 Miss Deborah Weston, one of the four daughters of
Mrs. Ann Weston, asked Mrs. Haviland whether she would not
like to own a house of her own, and proposed to talk the matter
over with the rest of the Weston family.   Later in the same year
she proposed that a house should be built on the demanded

premises and that Mrs. Haviland should pay for it by ten years' work for the family, provided $1,000 worth of work should be done. Mrs. Haviland assented to this proposal. Thereupon the house was built, and Mrs. Haviland moved into it in October, 1872, remaining until her death in 1910. Since that time the tenants have been in possession, claiming under her.

In 1878 Mrs. Weston died, leaving the premises by will to her four daughters. One of these, Miss Caroline Weston, died in the spring of 1882, leaving all of her property to her three sisters. Mrs. Haviland kept an account of her work for the Westons, and in 1882 she had done more than $1,000 worth. She then went to Miss Deborah Weston and asked for a deed. Miss Deborah Weston replied that as soon as she returned from Europe (where her surviving sisters lived) she would have it done. She also told Mrs. Haviland that they all were willing to give a deed except her sister Emma. In 1883 the defendant John Haviland told his mother that she ought to have a writing, but she replied that the Westons were very honorable people and could be relied upon to carry out their promise. Miss Deborah Weston went abroad in 1887 and never returned, and the Weston affairs were placed in the hands of an agent. The family owned a considerable amount of real property, the demanded premises being a corner lot fenced off out of the part of the estate known as Watch House Hill. In 1887 the agent for the estate demanded rent from Mrs. Haviland, who refused to pay any, claiming to hold under her agreement for sale.

Miss Emma Weston died shortly before March 21, 1888, and her interest in the premises passed to her sisters Anne and Deborah. In May, 1888, a writ of ejectment was brought against Mrs. Haviland by the two sisters, through their agent and counsel. Mrs. Haviland appeared by attorney and defended the action; and in June, 1888, the case was continued generally on the docket and nothing further was done. In 1890 Miss Deborah Weston died, leaving all of her property to her sister Anne, and in 1892 Anne died, leaving the demandants as her devisees and trustees.

The demandants, after their appointment, sent to Mrs. Haviland their agent, who demanded the payment of rent, but she refused, told her story and claimed ownership. Thereupon, in June, 1893, the demandants executed a lease to one Bourk, who

as lessee gave Mrs. Haviland notice to quit. She immediately brought a bill in equity against both Bourk and the demandants, alleging her possession and an oral promise of a deed, and praying that they all be enjoined from disturbing her possession, and that the present demandants be ordered to convey the premises to her. The defendants, who were the present demandants, demurred, and without a hearing thereon, no injunction having issued, the bill, in 1896, was dismissed, and Mrs. Haviland appealed. In 1901 the appeal was dismissed.

The judge ruled that, even if the suit in equity did not in itself interrupt Mrs. Haviland's possession, it suspended the demandants' right and duty to interrupt it; that from 1872 to 1882 Mrs. Haviland was in possession under a license and the promise of a future deed; that the terms on which she was to receive the deed were not completed until October, 1882, and that thereafter, until 1887, Mrs. Haviland was in possession, not adversely and claiming to be the owner, but under an oral promise which she trusted to the honor of the Westons, whose ownership she recognized, to fulfil.

The judge, after stating that the sole issue was whether the tenants showed an adverse occupation for twenty years under such circumstances that the demandants and their predecessors were estopped by the facts or by the statute of limitations from asserting their record title, found that until 1887 there was nothing to show the owners that Mrs. Haviland was claiming adversely to them, and that from 1893 to 1901 she was endeavoring to enforce an oral agreement for a deed and asking that the demandants be restrained from disturbing her possession; that, even if it were assumed that the tenants could tack to their occupation since 1901, the period between 1887 and the bringing of the bill in equity in 1893, they failed to show an acquirement of title by adverse possession for twenty years.

He ordered judgment for the demandants, and reported the case for determination by this court. If the rulings made were right and there should be judgment for the demandants, judgment was to issue as ordered. If not, such disposition was to be made of the case as this court might determine.

*A. E. Avery,* (*E. Avery* with him,) for the tenants.

*W. P. Kelley,* for the demandants.

BRALEY, J. By the parol contract the tenants' mother, the purchaser, entered into the exclusive occupation of the demanded premises in 1872, which continued until her death in 1910. The title, however, was not to pass until the consideration had been paid, and in 1882, having rendered the services agreed upon, she asked for a deed in accordance with the agreement. But, although assured that the vendor's promise would be kept, no deed ever has been given, and the demandants, who under intermediate devises have succeeded to the record ownership, now seek to recover the land.

It is settled by our decisions in *Sumner* v. *Stevens*, 6 Met. 337, 338, *Wheeler* v. *Laird*, 147 Mass. 421, and *Bond* v. *O'Gara*, 177 Mass. 139, that where under an oral contract for the sale of lands the purchaser enters and continues in unopposed and exclusive occupancy, his intention to take as owner is manifest, and until the owner of record asserts his title and regains possession the occupation by the purchaser is adverse. The purchaser having fully performed her part of the contract in 1882, performance by the vendor then became due. If thereafter the possession of the tenants' ancestor uninterruptedly continued for twenty or more years, the action was barred in 1902, nine years before the date of the writ. Pub. Sts. c. 173, § 2; c. 196, § 1. R. L. c. 179, § 2; c. 202, §§ 20, 22. *Brown* v. *King*, 5 Met. 173. *Johnson* v. *Bean*, 119 Mass. 271. *Bigelow Carpet Co.* v. *Wiggin*, 209 Mass. 542. *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15.

The demandants contend, that the proceedings in equity instituted in 1893, when they proposed to eject the tenants' mother from the premises, interrupted the running of the statute. It is true that, while she sought injunctive relief to prevent a threatened eviction, the bill also asked for specific performance, and upon demurrer it was dismissed. But this was an incident or a part only of her claim of exclusive ownership in bar of the attempt of ouster. The right to stop the acquisition of a prescriptive title, is a right possessed by the record owner of the land or his privies in estate. It is for this reason that the possession of the disseisor must be open and notorious or it is not adverse. *Currier* v. *Gale*, 3 Allen, 328, 330. A demand for a record title by a purchaser in possession, to which but for the statute of frauds no defence is shown by the report, was not as matter of law incon-

sistent with the assertion of any and all other rights enabling her to retain the premises. *Jordan* v. *Riley,* 178 Mass. 524. *Bond* v. *O'Gara,* 177 Mass. 139, 143. The allegations of the bill were not conclusive proof that the claim of ownership had been subordinated to the sole contingency of obtaining the promised conveyance, and that all other rights had been abandoned, but disclose an intention to rely upon every ground of affirmative defence when her rights were unjustifiably ignored and assailed. The ruling having been unqualified that the proceedings in equity stopped the running of the statute, as well as negatived any claim to the acquisition of title by prescription, it was erroneous, and the tenants under the terms of the report are entitled to judgment.

*So ordered.*