EDWARD L. LEAVITT *vs.* GEORGE L. ELKIN.

Norfolk.   May 12, 1943. — July 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Adverse Possession and Prescription.*

A vendee under a contract to purchase a lot of land, who for several years occupied the lot and also a strip of the adjoining lot in the expectation that when he paid the purchase price he would acquire title to the whole, and who, after receiving a deed of the lot, continued to occupy both the lot and the strip for a period of less than twenty years, did not acquire title to the strip by adverse possession although the whole period of his occupancy was more than twenty years; his possession before he received his deed was not under a claim of title.

BILL IN EQUITY, filed in the Superior Court on July 5, 1941.

The suit was heard by *Burns*, J., upon a master's report.

*R. B. Heavens*, for the plaintiff.

*A. W. Gilkerson*, (*J. A. Hutchins* with him,) for the defendant.

Cox, J.   This is a bill in equity to establish title to a strip of land that the plaintiff alleges he believed he owned as a part of the "original purchase" and was entitled to, in any event, by reason of adverse possession, "under the claim that it was a part of the original grant." The suit was referred to a master. An interlocutory decree was entered confirming the master's report, except as modified by sustaining two exceptions of the defendant, and a final decree was entered dismissing the bill. The plaintiff appealed from both decrees. The evidence is not reported.

The master made categorical findings and then stated: "Upon all the evidence I find the . . . [plaintiff] occupied and used a strip of land five feet wide to the west of his home extending a distance of one hundred feet from . . . [the street upon which the land fronted] in a southerly direction . . . for a period of twenty-six years believing that he had the right to possession and further owned and had title to the same since 1924. Such possession and maintenance was open, continuous, exclusive and adverse to all others during said period." The defendant excepted to these findings on the ground that they were "inconsistent with the rest of the findings . . . that said use, if any, was only occasional or temporary or permissive." He specifically objected to the statement in the findings, "and further owned and had title to the same since 1924," on the ground that if the plaintiff had any title, the same was by adverse possession only, "which claim could not be perfected until 1934 or 1935." The defendant also objected to the ultimate finding as to adverse possession on the ground that it was inconsistent with other findings. These are the exceptions that were sustained. We suspect this specific exception of the defendant as to ownership and title, and the conclusion of the trial judge thereon, is based upon a misconception of the master's finding. As we read this finding, all it amounts to is a finding that the plaintiff believed that he owned and had title to the strip in question since 1924 rather than a finding that he owned it. If, however, we are wrong about this, we think that the plaintiff's belief as to his right to possession during the twenty-six years was material as bearing upon the question of his intention. The exception to the further finding, as now assumed, that he owned and had title to the disputed strip since 1924, was rightly sustained, for reasons hereinafter appearing. The other exceptions will be referred to hereinafter.

There is no statement in the report that the ultimate findings are made solely by inference from subsidiary findings contained in other parts of the report. In the circumstances the judge below and this court "are bound by the ultimate findings unless the subsidiary facts stated are suf-

ficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received." *Brodie* v. *Evirs*, 313 Mass. 741, and cases cited. These ultimate findings must stand unless they come within the rule just stated.

The bill alleges that the plaintiff is the owner of a parcel of land in Weymouth that was conveyed to him by deed dated December 3, 1924; that prior to said conveyance, he occupied the same by virtue of a contract to purchase that was executed on August 8, 1916; that he has occupied "said premises" continuously since August 8, 1916; and that, "consequently, he has been the owner of an equity therein and the owner for a period of twenty-six years." These allegations were neither admitted nor denied by the defendant, who called for their proof. The master found that in 1914 or 1915, the plaintiff entered into a contract to purchase three lots from the trustees of a land trust who were the owners and developers of a real estate project in Weymouth; that he took possession of the "premises" in 1916; and finally acquired title to the lots in December, 1924. We are of the opinion that if these findings, and the legal consequences that follow from them, require the conclusion that the plaintiff could not begin to acquire rights by adverse possession to the strip in question until he acquired title in 1924, they are inconsistent with the master's ultimate conclusion that the plaintiff occupied and used a strip of land five feet wide "to the west of his home" for twenty-six years, and that his possession was exclusive and adverse to all others during that period.

When the plaintiff took possession of the "premises" in August, 1916, there was an old building located on the westerly lot, number 982, of the three that he had contracted to purchase. There was a stake on the westerly side of lot 982 which was on a line about five feet from the westerly side of the old building. The three lots had been staked and the plaintiff "drove an iron pipe along side of the four stakes comprising the area which included the three lots in question." In 1932, the plaintiff remodeled the old building, and at that time the contractor and build-

ing inspector of the town "determined the west line of the . . . [plaintiff's] lot by running a string from the iron stakes resulting in the same being established approximately five feet from the west side of the building." The lot to the west of the plaintiff's lots was purchased in 1919 by one Walsh, a predecessor in title of the defendant, who acquired title in 1940. It is unnecessary, in view of our conclusion, to recite the subsidiary findings of the master as to the use that the plaintiff made of the land immediately west of lot 982.

"It is elementary law that adverse possession which will ripen into a title must be under a claim of right, . . . or, as it has been thought more accurate to say, 'with an intention to appropriate and hold the same as owner, and to the exclusion, rightfully or wrongfully, of every one else.'" *Bond* v. *O'Gara*, 177 Mass. 139, 143–144. The claim must be one of title. *Nantucket* v. *Mitchell*, 271 Mass. 62, 68, and cases cited. The master found that the defendant's land had been recently surveyed and that this "resulted in establishing the easterly lot lines owned by the . . . [defendant] as running about two feet five inches from the westerly side" of the plaintiff's building. This is the nearest approach to any finding of the true lot lines although the master states in a concluding paragraph of his report, in effect, that what the plaintiff is claiming is title by adverse possession to a strip of land two feet seven inches wide. The defendant, in his brief, seems to concede that it appears that the plaintiff's land, acquired by purchase, extended westerly from the house two feet five inches. We assume, therefore, that the plaintiff's contract for sale comprised so much of the land as lay westerly of the old building for a distance of two feet five inches and that we are concerned only with the adjoining strip two feet seven inches in width.

The inference is warranted that the defendant's predecessor in title acquired title to his land from the plaintiff's grantors. This was in 1919. The further inference is warranted that the plaintiff's possession, until he acquired title in 1924, was by virtue of his contract to purchase. It follows

from the report that the plaintiff, until he acquired title, was a tenant of some sort of his grantors and that, as to the land that he had agreed to purchase, he was in no sense holding adversely. *Brown* v. *King*, 5 Met. 173, 180–181. *Plimpton* v. *Plimpton*, 12 Cush. 458, 466, and cases cited. *O'Brien* v. *Joyce*, 117 Mass. 360, 362. See *Noyes* v. *Ambler*, 296 Mass. 524, 528; *Anderson* v. *Connolly*, 310 Mass. 5, 11. The case at bar in this respect is distinguishable from cases of a grant, sale or gift of land by parol. See *Wheeler* v. *Laird*, 147 Mass. 421, and cases cited. See also *Endicott* v. *Haviland*, 220 Mass. 48, 51, where possession of land had been given, the title to which was not to pass until the consideration had been paid. The consideration was paid, but no deed was given. It was said at page 51: "The purchaser having fully performed her part of the contract . . . performance by the vendor then became due. If thereafter the possession of the tenants' ancestor uninterruptedly continued for twenty or more years, the action was barred. . . ." See *Sexton* v. *Prendergast*, 277 Mass. 118.

It seems that up to 1919, when the defendant's predecessor purchased his lots, the plaintiff could acquire no rights adversely to his grantors, and we are of opinion that thereafter until 1924, when the plaintiff acquired title by deed to his lots, he could acquire no rights adversely in the disputed strip of land.

It is undoubtedly true that one's belief that he owns land may be immaterial on the question whether he has acquired title thereto by adverse possession. "But when the belief carries with it a corresponding limitation of claim the statute [of limitations] cannot run, because there is no disseisin except the fictitious one which the owner may be entitled to force upon the occupant for the sake of a remedy. . . . Liability to a writ of entry and disseisin are not convertible terms in any other sense." *Bond* v. *O'Gara*, 177 Mass. 139, 143. We are of opinion that the case at bar comes within the reasoning of the case just cited. In that case there was evidence that the land in question, after it was conveyed, continued to be occupied by one who was in by license from the grantor and who did not know of the conveyance. The

jury were instructed that if the first occupant was in by permission only, he acquired no rights against the owner of the land; that if he and his family continued to occupy on the belief that the permission continued, no right could be acquired, but that if the occupancy was on the belief that the land was theirs and continued twenty years uninterruptedly, being adverse and open, a title would be acquired. The jury returned a verdict for the tenant, the case being a writ of entry, and the demandant excepted. The question raised by the exceptions was whether the fact that the license was ended by the conveyance of the licensor necessarily made the occupation of the first occupant adverse, if he supposed the license still to be in operation and purported to occupy under it. In the opinion by Holmes, C.J., it was said at page 143: "The answer is plain. 'If a man enter into possession, under a supposition of a lawful limited right, as under a lease, which turns out to be void, . . . if he be a disseisor at all, it is only at the election of the disseisee. . . . If the party claim only a limited estate, and not a fee, the law will not, contrary to his intentions, enlarge it to a fee.' "

This principle seems applicable to the facts in the case at bar. Until the plaintiff received his deed he must be held to have occupied the disputed strip as well as the rest of the land, not under a claim of title but rather with an expectancy that when he paid for his lots he would acquire title to the disputed strip as well. The inference is warranted that his occupancy was under a claim, not of title, but that if he paid for the land he would acquire title. This is quite another thing from "an intention to appropriate and hold the same as owner, and to the exclusion, rightfully or wrongfully, of every one else," see *Bond* v. *O'Gara,* 177 Mass. 139, 144. This rule as to an intention to appropriate is an ancient one. See Co. Lit. 153b and *Blunden* v. *Baugh,* Cro. Car. 302, 303, cited in the *Bond* case at page 144.

Accordingly we are of opinion that the subsidiary findings referred to are inconsistent with the ultimate finding as to the plaintiff's possession being exclusive and adverse to all others.

The case at bar is distinguishable from *Hubbard* v. *Little,*

9 Cush. 475; *Holmes* v. *Turners' Falls Co.* 150 Mass. 535, 547; *Wishart* v. *McKnight,* 178 Mass. 356; *Jordan* v. *Riley,* 178 Mass. 524; *Van Allen* v. *Sweet,* 239 Mass. 571; *Robert* v. *O'Connell,* 269 Mass. 532, 536.

In view of what has been said it is unnecessary to consider the exceptions to the master's report in so far as they relate to the character of the use and occupation by the plaintiff of the disputed strip of land. The plaintiff was not harmed by the sustaining of so much of the exceptions as related to the findings of the master in this connection. It follows that except as modified by what has been said, the interlocutory decree is affirmed, as well as the final decree dismissing the bill. The defendant is to have his costs.

*Ordered accordingly.*