CLEMENTINA OTTAVIA *vs.* MARIE SAVARESE, trustee.

Suffolk.    December 4, 1958. — January 13, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Adverse Possession and Prescription.    Trespass.    Equity Jurisdiction,* Trespass. *Equity Pleading and Practice,* Master: findings.

Where a master's report does not show that a conclusion is based solely on the subsidiary facts reported by him and the evidence is not reported, the conclusion is binding on the trial court and on this court unless the subsidiary facts reported are sufficient in themselves to demonstrate that the conclusion could not be justified upon any evidence that the master might have received.  [332]

Discussion of the elements of claim of right and of intent to oust in the acquisition of rights by prescription.  [333–334]

Use for more than twenty years of an exterior brick wall of a plaintiff's building as a setting for beams supporting a room in the defendant's adjoining building, openly, notoriously, in derogation of the rights of the owners of the plaintiff's building, and without any license or permission from them, warranted a conclusion that the defendant had acquired a prescriptive right to such use even though he did not know that the beams of his room "intruded into" the wall of the plaintiff's building and he did know that the wall of the plaintiff's building belonged to the plaintiff and he never claimed to own it or intended to deprive the plaintiff of any part of it at any time.  [334–335]

A prescriptive right in a defendant as the owner of a building to use a part of an exterior brick wall of the plaintiff's adjoining building, not a party wall, as a setting for beams supporting a room in the defendant's building did not give the defendant a prescriptive right to use the whole or any other part of the wall of the plaintiff's building for the support of an additional room in the defendant's building.  [335]

An intentional, open trespass committed without regard to the consequences by a defendant when he embedded beams supporting a room in his building in the exterior brick wall of the plaintiff's adjoining

building and cut a groove from that wall and inserted copper flashing therein for his room entitled the plaintiff to a decree ordering the defendant to remove the beams and the copper flashing, to restore the plaintiff's wall to its original condition, and to desist from using it as a support for his room; and to past damages.   [335–337]

BILL IN EQUITY, filed in the Superior Court on January 24, 1957.

The suit was heard by *Brogna, J.*, on a master's report.

The case was submitted on briefs.

*Salvatore E. Aloisi*, for the plaintiff.

*Frank P. Fralli*, for the defendant.

RONAN, J.   This is a bill in equity for a mandatory injunction to require the defendant to remove certain supporting beams encroaching upon the plaintiff's property and for damages.   From an interlocutory decree confirming the master's report and from a final decree awarding damages but denying the injunction, the plaintiff appeals.   The evidence is not reported.

The material facts found by a master are as follows:   The parties are the owners of adjacent premises.   The plaintiff acquired title to her property in 1937; the defendant in 1939.   On the land of the defendant is a brick building five stories in height which has been in existence since 1880, and on the plaintiff's land stands another brick building four stories high.   It does not appear when the latter was built, though it has been in existence "at least since 1927."   Between the buildings is a light shaft which is situated entirely on the defendant's land.

Sometime prior to 1927 the defendant's predecessors in title built a room in the light shaft by roofing over the first story between the buildings, and, in doing so, inserted four beams into the wall of what is now the plaintiff's building.

In the autumn of 1954 the defendant made certain temporary repairs on the roof of the room, and the following spring made repairs of a permanent character thereon.   At that time, however, a second story was added atop the existing room.   The master found that none of the repairs varied the arrangement which had existed with regard to the sup-

ports for the roof of the original room in the light shaft, but that with respect to the additional room four additional beams were built into the plaintiff's wall. The wall is three bricks in width, and two heights or "courses" of the outer layer of bricks approximately three bricks in length were removed for the setting of each of the additional beams. In addition a three-quarter inch groove was cut from the wall so that a strip of copper flashing could be placed around the perimeter of the roof of the second room. These encroachments were without license or permission of the plaintiff. The parties did, however, discuss the matter two months after the completion of the second room, at which time the plaintiff referred the defendant to her (the plaintiff's) lawyer. The master ruled that the plaintiff had saved her rights with respect to the encroachments resulting from the new construction.

With respect to the original room in the light shaft, however, he found that it "had been used by the defendant or her lessees or predecessors in title openly, exclusively, adversely and hostilely since 1927," so that by 1954, when the repairs on it were begun, "the defendant had acquired a prescriptive right to the wall of the plaintiff's building for a height of one story more or less, and to . . . [its] interior . . . where the four beams . . . were placed." The plaintiff contends that this finding is inconsistent with the subsidiary findings in the master's report on recommittal, specifically his findings that "the defendant did not know that the joists or beams were intruded into the plaintiff's wall," and "that she knew the plaintiff's wall belonged to the plaintiff but that she, the defendant, never claimed ownership over it, nor did she intend to deprive the plaintiff of any part of her wall at any time." Since the evidence is not reported we are bound by the ultimate finding of the master unless, as the plaintiff contends, the subsidiary findings reported "are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received." *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 435. *Kasper* v. *H. P.*

*Hood & Sons, Inc.* 291 Mass. 24, 25. *Shoer* v. *Daffe,* 337 Mass. 420, 423.

The issue presented by the alleged inconsistency between the master's ultimate finding and his subsidiary findings is whether claim of right and an intent to oust are necessary elements in the acquisition of rights by prescription. It is well established in this Commonwealth that an adverse possessor, to gain title, must hold under a claim of right and with an intention to "hold the same as owner, and to the exclusion, rightfully or wrongfully, of every one else." *Bond* v. *O'Gara,* 177 Mass. 139, 143–144. *Curtis* v. *Goodwin,* 232 Mass. 538, 540. *Nantucket* v. *Mitchell,* 271 Mass. 62, 68. *Leavitt* v. *Elkin,* 314 Mass. 396, 399. *Holmes* v. *Johnson,* 324 Mass. 450, 453. This rule has been severely criticized. It has been said that apart from two situations, namely the situation where a disclaimer by the user to the true owner of any purpose to gain rights by adverse possession lulls the latter into inaction, and the situation involving a "mere squatter" where the possession is doubtful and equivocal in fact, "there seems to be no justification for requiring a claim of right or title as essential to an adverse possession." Am. Law of Property, § 15.4, p. 776 et seq. "The great majority of the cases establish convincingly that the alleged requirements of claim of title and of hostility of possession mean only that the possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner and therefore in actual hostility to him irrespective of the possessor's actual state of mind or intent." Am. Law of Property, § 15.4, pp. 776–777. From the standpoint of the true owner, the purpose of the various requirements of adverse possession — that the nonpermissive use by another be actual, open, notorious, exclusive and adverse — is to put him on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action. Where a claim of right is made or where an intention to oust exists and is communicated or is open and notorious, the purpose of

notice is satisfied, for it is likely that the encroachment and
the fact of its hostility will come to the attention of the true
owner. The nonexistence of a claim of right or intent to
oust does not, however, necessarily preclude notice. Where
the user has acted, without license or permission of the true
owner, in a manner inconsistent with the true owner's
rights, the acts alone (without any explicit claim of right or
intent to dispossess) may be sufficient to put the true owner
on notice of the nonpermissive use. See Am. Law of Prop-
erty, § 15.4, pp. 771–785; Restatement: Property, § 458,
comment a and comment d. Acts undeniably may evidence
an intent to claim as of right, *Shoer* v. *Daffe,* 337 Mass.
420, 423, and the physical facts of entry and continued pos-
session may themselves evidence an intent to occupy and
to hold as of right sufficient in law to support the acquisition
of rights by prescription. *Holmes* v. *Johnson,* 324 Mass.
450, 454. That the uncommunicated mental attitude of the
possessor is irrelevant where his acts import an adverse
character to his holding is shown by cases involving dis-
puted boundaries where the possessor intends to hold with-
out intending to deprive any other of what is rightfully his.
In *Van Allen* v. *Sweet,* 239 Mass. 571, a boundary case, the
possessor was held to have acquired rights by prescription
to a strip of land despite his statement to the plaintiff "I
do not want anything not belonging to me." See also
*Ridgely* v. *Lewis,* 204 Md. 563; Am. Law of Property,
§ 15.5, pp. 785–791.

In this case the defendant or her predecessors actually
used a portion of the plaintiff's wall in derogation of her
rights therein. There was no evidence that this use was
permissive or by license of the plaintiff or her predecessors;
on the contrary, the master found it was without such license
or permission. Although the fact that the beams were in
the plaintiff's wall and the details of the construction may
not have been known to the plaintiff, the fact that the roof
of the room rested against and was in some manner supported
by her wall was obvious and must have been known to her.
See *McLaughlin* v. *Cecconi,* 141 Mass. 252, 253–254. It was

open, notorious, and in derogation of her rights. We hold, therefore, that there was no error in the master's finding that the defendant had acquired a prescriptive right in the plaintiff's wall to the extent of the use therein with respect to the original room in the light shaft, and that his subsidiary findings are not inconsistent with this result. *American Oil Co.* v. *Alexanderian, ante,* 112, 115.

The defendant contends that her prescriptive right is not limited to that part of the plaintiff's wall where the first floor supports are embedded, but extends to the entire wall. There is nothing in the record to indicate any use by the defendant (prior to 1954) of any parts of the four story brick wall other than in connection with the supports for the original room. The limited use of the wall made by the defendant did not entitle her to prescriptive rights to the whole. *McLaughlin* v. *Cecconi,* 141 Mass. 252. And see *Proprietors of the Kennebeck Purchase* v. *Springer,* 4 Mass. 416; *Bellis* v. *Bellis,* 122 Mass. 414, 416; *Tinker* v. *Bessel,* 213 Mass. 74; *Ansin* v. *Taylor,* 262 Mass. 159. There is nothing to indicate that the wall in question was a party wall, and the defendant's very limited use of it did not make it such. The cases relied upon by the defendant, involving, as they do, party walls, are not in point.

With respect to the room added atop the existing one in the light shaft, although there was a finding that "the construction of . . . [its] roof with its attendant intruding of four beams into the plaintiff's wall was an intentional, open trespass committed without regard to the consequences," the judge merely awarded the plaintiff money damages for the encroachment but did not enjoin its continuation. The plaintiff urges that the mandatory injunction should have been issued. We agree. Where the aid of courts of equity of this Commonwealth has been invoked by the owner of land to require the removal of buildings or structures unlawfully upon his land, they have been loath not to grant the relief sought, even though the plaintiff may have suffered little or no damage on account of the offending building or structure, or the cost of removing the encroachment is

greatly disproportionate to the benefit to the plaintiff result-
ing from its removal. *Geragosian* v. *Union Realty Co.* 289
Mass. 104, 108–110, and cases cited at p. 110. *Ferrone* v.
*Rossi,* 311 Mass. 591, 593. *Beaudoin* v. *Sinodinos,* 313 Mass.
511, 519. *Goldstein* v. *Beal,* 317 Mass. 750, 757–758. *Blood*
v. *Cohen,* 330 Mass. 385, 387. "The principal reason for
this is that which lies at the foundation of the jurisdiction
for decreeing specific performance of contracts for the sale of
real estate. A particular piece of real estate cannot be re-
placed by any sum of money, however large, and one who
wants a particular estate for a specific use, if deprived of
his rights, cannot be said to receive an exact equivalent or
complete indemnity by the payment of a sum of money."
*Lynch* v. *Union Inst. for Sav.* 159 Mass. 306, 308. Were the
remedy of an injunction unavailable, the encroaching party
would be able to take rights in realty from the owner at a
valuation, a power properly limited to eminent domain
proceedings. *Geragosian* v. *Union Realty Co.* 289 Mass.
104, 109. There have been exceptional cases, however, as
where the unlawful encroachment has been made innocently,
and the cost of removal by the defendant would be greatly
disproportionate to the injury to the plaintiff from its con-
tinuation, or where the substantial rights of the owner may
be protected without recourse to an injunction, or where
an injunction would be oppressive and inequitable, where
courts of equity have refused to grant the injunction and
left the plaintiff to his remedy of damages. *Lynch* v. *Union
Inst. for Sav.* 159 Mass. 306. *Gray* v. *Howell,* 292 Mass. 400.
*Triulzi* v. *Costa,* 296 Mass. 24, 28. But these are the excep-
tions. What is just and equitable in cases of this sort de-
pends very much upon the particular facts and circumstances
disclosed. Here it was found by the master that the con-
struction of the additional room with its resulting intrusion
of beams into the plaintiff's wall was an intentional, open
trespass committed without regard to consequences, and
that the plaintiff saved her rights with respect thereto.
In the circumstances it would be inequitable not to require
the defendant to restore the plaintiff's wall to its original

condition prior to the trespass with respect to the four additional beams and the copper flashing; to remit the plaintiff to the remedy of damages would enable the defendant in effect to force the sale of rights in the plaintiff's property by the defendant's own intentional wrong.

The bill of complaint, in addition to an injunction, asked for damages for "the destruction and damage" of the building and "the reasonable value of the use made." The master found, referring to the portion of the premises in which the defendant had no prescriptive right, that "the damages suffered by the plaintiff are" $300. It is plain that the judge in the Superior Court construed the finding of $300 to cover past and future damage. It is not clear that it does not do so. See *Levi* v. *Worcester Consol. St. Ry.* 193 Mass. 116, 119; *Gray* v. *Howell,* 292 Mass. 400, 405. The plaintiff is entitled only to past damages, and when by recommittal, or on evidence in the Superior Court, the amount is ascertained, the final decree shall include an award in that amount. The plaintiff may not have an award for counsel fees and expenses.

The interlocutory decree is affirmed. The final decree is reversed and a final decree is to be entered dismissing the bill as to the first story room; ordering the defendant to remove the four additional beams and the copper flashing inserted in connection with the second story room, to restore the plaintiff's wall to its condition prior to the insertion thereof, and to desist from using the plaintiff's wall as a support for the second story room; and awarding damages in accordance with this opinion. The plaintiff is to have costs of the appeal.

*So ordered.*