246                  70 Mass. App. Ct. 246 (2007)

Air Plum Island, Inc. *v.* Society for the Preservation of New England Antiquities.

Air Plum Island, Inc. *vs.* Society for the Preservation of New England Antiquities.

No. 06-P-736.

Essex. February 15, 2007. - September 26, 2007.

Present: Cypher, Green, & Sikora, JJ.

*Adverse Possession and Prescription. Real Property,* Adverse possession, Lease.

Discussion of the standard of review applicable to the allowance of summary judgment in a civil action involving the interpretation of an unambiguous written instrument. [251-252]

Discussion of the elements of a claim of adverse possession. [252-253]

In a civil action seeking a judgment declaring that the plaintiff owned a certain parcel of land by adverse possession, the judge properly granted summary judgment in favor of the defendant, where the text of a lease between the plaintiff and the defendant's predecessors in interest and the uncontroverted circumstances of its formation supported the conclusion that the plaintiff occupied the parcel throughout its tenancy in permissive compliance with the lease [253-255]; further, the conduct of the plaintiff was not so continuously and openly adverse or hostile as to warn the defendant of a challenge to its title [255-256].

CIVIL ACTION commenced in the Superior Court Department on October 12, 2000.

The case was heard by *Nancy Staffier-Holtz,* J., on motions for summary judgment.

*William H. Sheehan, III,* for the plaintiff.

*Alan E. Lipkind (Diane A.D. Noel* with him) for the defendant.

SIKORA, J. This appeal presents a question of adverse possession. The land in dispute is a 9.1-acre parcel (the runway parcel) containing the major segment of the runway of the Plum Island Airport (airport). The plaintiff, Air Plum Island, Inc. (API), operated the private airport from 1966 through 2000. The defendant Society for the Preservation of New England Antiquities (SPNEA) has been the record owner of the disputed parcel

70 Mass. App. Ct. 246 (2007)                    247

Air Plum Island, Inc. *v.* Society for the Preservation of New England Antiquities.

since 1971.[1] In 2000, API began this action in the Superior Court seeking a declaration of its ownership of the runway parcel by reason of adverse possession. SPNEA answered that API's use of the runway parcel had been not adverse, but rather permissive under a commercial lease. After completion of discovery, each side moved for summary judgment. By a memorandum of decision, a judge of the Superior Court allowed SPNEA's motion and denied API's. API has appealed.

*Factual background.* The following undisputed facts emerge from the summary judgment record. Since approximately 1966, the airport has operated upon a tract of about forty-one acres. The tract stretches from Newbury at its east end into Newburyport at its west end. Along its entire northern edge it abuts the Plum Island Turnpike. The airport tract lies within a larger area of about 270 acres known as Little's Farm. As of 1966, sisters Agnes and Amelia Little held title to all but 6.5 acres at the eastern end of the airport tract. Those belonged to Warren Frothingham, the proprietor of the airport. In order to conduct the business, Frothingham leased the adjoining westerly acreage from the Little sisters.

In 1966, Richard Hordon and two associates formed API and purchased the buildings, the equipment, the 6.5 acres, and the remaining assets of the airport business from Frothingham. At that time the airport tract included one east-to-west paved runway, of which 500 feet were located on the 6.5-acre Frothingham parcel and another 1,250 feet on the adjoining land to the west, the centrally located runway parcel. Farther west the airport contained a grass runway, a series of hangars, and a restaurant (the airport parcel). API proposed to succeed Frothingham as a tenant upon the runway parcel and airport parcel. For the four-year period of 1966 to 1970, API and the Little sisters executed one or two short-term leases for that purpose. During this interim API extended the paved runway westward into the airport parcel by 750 feet.

On December 8, 1970, API and the Little sisters executed a long-term lease. It provided API with a tenancy of twenty years as of January 1, 1971, and with rights of renewal for two suc-

[1]SPNEA is a nonprofit corporation dedicated to the preservation of buildings, landscapes, and objects of historical or cultural significance.

cessive five-year periods thereafter. It set minimum annual rental figures for each five-year segment and called for a variable higher annual rent as a percentage of the airport's sales of fuel and oil and of its gross receipts for each year. It authorized API to erect upon "the demised premises" buildings (not to exceed two stories) necessary or convenient for the conduct of a private airport, and to grade, drain, and surface any portion of the "demised premises as may be necessary for runways, taxi strips, parking areas, and the like." It required API to "bear and promptly pay any real estate taxes or betterment or other assessments or charges whatsoever on the demised premises."

The introductory language of the lease identified the "demised premises" as a "certain parcel of land in Newbury . . . more particularly described in a plan [attached] as Appendix A" to the lease. A copy of appendix A appears as an Appendix to this decision. Appendix A appeared on the stationery of API's legal counsel, the firm of Beit & Wells. API had presented it for inclusion in the earlier one or two leases covering the period of 1966 to 1970.[2] Appendix A to the 1970 lease consisted of a sketch of the "leased premises" enclosed by hyphenated or dotted boundaries of measured lengths and containing a rectangular building; a designation of the Plum Island Turnpike; the specification of a landmark stone (point A) on the turnpike as the border of Newbury and Newburyport; two points marked B and C located, respectively, on the east and west bounds of the "leased premises"; and a northward directional axis. Immediately to the right of the eastern boundary of the "leased premises" is the phrase "Land of Air Plum Island, Inc." The sketch made no explicit reference to the discrete area of the runway parcel.

Above the sketch is the date of the execution of the long-term lease. Below it are the following four "Notes."

"1.   Scale, bearings, and distance are approximate.

"2.   Size and location of building approximate.

"3.   Point "A" on the above sketch is a stone bound on the

---

[2] By the outbreak of litigation in 2000, the parties were unable to find those early documents. At his deposition, Hordon testified, "I presented that drawing, and that was what everybody went by."

Plum Island Turnpike demarcating the Newburyport-Newbury line.

"4.  The sketch may not reflect precisely the location of those boundaries indicated by dotted lines. However, the demise includes that land of the Lessors lying southerly of points marked B and C on said plan, which is necessary or convenient for runways, taxiways, approach zones, and other related purposes, whether the same lie within or without the dotted boundaries."

On March 29, 1971, API filed a notice of lease in the Essex South registry of deeds. Without a sketch it described the boundaries of the leased premises as an enclosure starting and ending at the turnpike border stone.[3] The notice included a qualification similar to note 4 on appendix A that the leased premises included land "southerly of described premises as may be necessary or convenient for runways, taxiways, approach zones, and other related purposes." Also the fourth clause of the description in the notice of lease specified that the eastern boundary of the leased premises runs for 1,110 feet northwesterly to point B, or in effect 1,110 feet southeasterly from point B.[4]

In 1971, the Little sisters conveyed the entire 270-acre farm tract to SPNEA. They reserved a life estate. The last of the sisters died in 1986.

Hordon purchased the interest of one API associate in 1972 and of the other in 1976. On each occasion the departing associate conveyed his interest in the Frothingham parcel to Hordon. Hordon, in turn, conveyed the Frothingham parcel to a realty trust controlled by his wife. As trustee she conveyed it to a second trust also controlled by her.

The airport tenancy proceeded from 1971 onward in general

---

[3]The second paragraph of the notice described the perimeter of the leased land as follows (emphasis supplied):

"Beginning at a stone bound on the Plum Island Turnpike, then north 310° West 1,650 feet; thence South 255° West 210 feet; thence South 150° East 2,310 feet; *thence North 35° East 1,110 feet*; thence North 288° West 240 feet to the point of beginning."

[4]See note 3, *supra*, the emphasized clause.

harmony. In 1973, API purchased a hangar and assembled it on the runway parcel without consultation with the Little sisters or SPNEA. In 1988, API erected another hangar on the airport parcel. The blizzard of 1978 resulted in substantial damage to the entire runway. To repave it, API procured a loan from the Small Business Administration secured by a mortgage upon the Frothingham parcel. Throughout the term of the lease API paid the real estate taxes upon all the land comprising the runway parcel and the airport parcel. In 1984 and 1985, SPNEA and Amelia Little applied to the town of Newbury for reclassification of the airport property bordering the Plum Island Turnpike as recreational land entitled to more favorable tax treatment. The applications required the verifying signature of any lessee engaged in the use of the land. On both occasions Hordon endorsed the application for API as the lessee. The disputed runway parcel lies entirely within the reclassified land.

During the period of 1993 to 1998, SPNEA sought to qualify a portion of the Little farmland for an agricultural preservation restriction and to sell the restricted land to the Commonwealth. For that purpose it commissioned a survey of the entire property including the airport tract. The survey established definitively that record ownership of the airport land was as follows: the eastern-end 6.5-acre Frothingham parcel was vested in the realty trust controlled by Hordon's wife; the 9.1-acre runway parcel was vested in SPNEA; and the 24.7-acre westernmost airport parcel, enclosed by the lease sketch boundaries, was vested in SPNEA. A second survey in 1999 confirmed this delineation.

The relationship between API and SPNEA deteriorated during 1998 and 1999. For some years API had rented space on the airport grounds to crafts and cultural fairs. Heavy crowds at a crafts fair over the Labor Day weekend of 1998 had disrupted traffic access to nearby beaches and alienated residents and officials of both Newbury and Newburyport. In 1999 those municipalities sued the proprietors of the fairs and API, in an effort to enjoin further fairs. Tension arose between API and SPNEA. On September 15, 1999, the trustees of SPNEA voted not to renew API's lease upon its expiration on December 31, 2000. Attempts at reconciliation failed. In early October of 2000, SPNEA issued a request for proposals from prospective

lessees of the thirty-four acres comprising the airport and runway parcels.

API promptly filed suit upon the claim that it had acquired ownership of the runway parcel by adverse possession.[5] It contended that the designation of the area comprising the runway parcel as "Land of Air Plum Island, Inc." in the lease sketch and its use of that area through the ensuing thirty years satisfied the requirements of that doctrine. SPNEA responded that the lease included the runway parcel as a permitted use and precluded any claim of adverse occupancy.

*Discussion.* 1. *Standard of review.* With the same record as the motion judge, the reviewing court examines the allowance of summary judgment de novo. *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997). We consider the record in the light most favorable to the nonmoving or losing party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). *Joslyn* v. *Chang*, 445 Mass. 344, 345 (2005). *Prozinski* v. *Northeast Real Estate Servs., LLC*, 59 Mass. App. Ct. 599, 602 (2003). The successful party must have established the applicable law of the case and the absence of any genuine issue of material fact. *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). *Arcidi* v. *National Assoc. of Governmental Employees, Inc.*, 447 Mass. 616, 619 (2006). The substantive law determines the materiality of the factual information. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 608 (1991).

In this instance the motion judge examined the terms of the parties' commercial lease. The interpretation of an unambiguous written instrument is a question of law ordinarily appropriate for summary judgment. See *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995); *Locicero* v. *Hartford Ins. Group*, 25 Mass. App. Ct. 339, 341 (1988). The claim of an ambiguity in an instrument does not necessarily prevent the allowance of summary judgment. See *USTrust* v. *Henley & Warren Mgmt., Inc.*, 40 Mass. App. Ct. 337, 343 (1996). The pre-

---

[5]The concluding allegation of API's complaint was that it had, "for more than twenty years, held the Runway Parcel in open and notorious possession, adversely and hostile to the right of [SPNEA] and its predecessors without interruption or interference."

liminary issue of the existence of an ambiguity is itself a question of law. *Berkowitz* v. *President & Fellows of Harvard College*, 58 Mass. App. Ct. 262, 270 (2003). *Diamond Crystal Brands, Inc.* v. *Backleaf, LLC*, 60 Mass. App. Ct. 502, 504-505 (2004). An ambiguous contract or lease may be suitable for interpretation and for resulting summary judgment if the interpretation rests upon undisputed subsidiary facts. See *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989); *Gross* v. *Prudential Ins. Co. of America, Inc.*, 48 Mass. App. Ct. 115, 119, 122 (1999).

2. *Adverse possession.* As a claimant of ownership through adverse possession, API carries the burden of proof. It must establish actual, open, exclusive, and nonpermissive use of the runway parcel for a continuous period of twenty years. *Totman* v. *Malloy*, 431 Mass. 143, 145 (2000). See *Ottavia* v. *Savarese*, 338 Mass. 330, 332-333 (1959). *Kendall* v. *Selvaggio*, 413 Mass. 619, 621-622 (1992). The case law has tended to use interchangeably the terms "nonpermissive," "adverse," "hostile," and "under claim of right." See *id.* at 622; *Totman* v. *Malloy, supra* at 145. The court in *Ottavia, supra* at 333, emphasized the fundamental purpose of these formulations. "From the standpoint of the true owner, the purpose of the various requirements of adverse possession — that the nonpermissive use by another be actual, open, notorious, exclusive and adverse — is to put him on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action." *Ibid.*

The inquiry into the element of nonpermissive or hostile use may consider multiple circumstances, including the character of the land, the beneficiaries from its use, the maintenance of it, and the relationship between the contesting parties. *Kendall* v. *Selvaggio, supra* at 624; *Totman* v. *Malloy, supra* at 145. The mentalities or intentions of the parties are immaterial to the issue of nonpermissive use. *Ibid.* The material fact is the conduct of the possessor. The material question is whether the objectively viewed actions of the possessor provided notice of adverse or hostile use to the record owner. *Kendall, supra* at 624; *Totman, supra* at 146. In this case we examine the undisputed subsidiary facts of the record to determine the character of API's use of

the 9.1-acre runway parcel as adverse, permissive, or genuinely disputable so as to require a trial.

3. *The 1970 lease.* The parties have waged the case largely on the meaning of the 1970 lease. The motion judge analyzed it in detail. From its text and the uncontroverted circumstances of its formation, she concluded that API had occupied the runway parcel throughout its tenancy in permissive compliance with the lease. We agree.

Use or occupancy in accordance with a lease precludes adverse possession. See *Curtis* v. *Goodwin,* 232 Mass. 538, 540 (1919). API's rationale in support of adverse possession is that the sketch appended to the lease describes the area immediately east of the airport parcel as "Land of Air Plum Island, Inc."; and that accompanying note 4 extending the demise to include land "lying southerly" of points B and C necessary or convenient for airport use refers only to a grass runway located directly south of the airport parcel. In this view, its use of the 9.1 acres was open and nonpermissive from 1971 to 2000.

API drew and presented the sketch appended to the 1970 lease. "As a general proposition, the meaning of a written document, if placed in doubt, is construed against the party that wrote it." *Beatty* v. *NP Corp.,* 31 Mass. App. Ct. at 612 (affirming summary judgment against the author of the disputed contract). That canon of construction applies equally to contracts and leases. See *Charles E. Burt, Inc.* v. *Seven Grand Corp.,* 340 Mass. 124, 127-128 (1959) (lease); *Cooley* v. *Bettigole,* 1 Mass. App. Ct. 515, 521 (1973) (lease). See also *Seaco Ins. Co.* v. *Barbosa,* 435 Mass. 772, 779 (2002) (lease). It rests upon the practical and fair premise that the drafter had the capacity and opportunity for clear expression and that he should bear the detriment of unclear expression. In this instance API generally characterized land east of the airport parcel as its own. It created a facial ambiguity. See *Citation Ins. Co.* v. *Gomez,* 426 Mass. 379, 381 (1998) (an ambiguous term is one susceptible to more than one meaning and to a reasonable difference of opinion).

That ambiguity was preventable. From its purchase of the east-end Frothingham parcel, API possessed deeds describing its 6.5 acres with considerable specificity by size, bounds, and proximity to creek and marsh land. It could have, and should

have, distinguished the eastern 6.5-acre Frothingham parcel from the adjoining runway parcel; its failure to do so created an ambiguity tending to aggrandize its ownership by the 9.1 additional acres.

The ambiguity of the sketch in appendix A is curable from the diagram itself and from its notations. Notes 1 and 4 acknowledge the inexact nature of the distances and boundaries shown. Note 4 also enlarges the leased area to include all land lying southerly of points B and C "necessary or convenient for runways, taxiways, approach zones, and other related purposes." If one draws a line between those points (a horizontal line on the sketch) and orients from the northern directional, the entire runway parcel materializes southeasterly of the horizontal B-to-C line and southeasterly of both discrete points. The notice of the lease filed at the registry, especially the fourth clause of the boundary description, confirms that the entire common boundary of the airport parcel and runway parcel runs southward from point B; and that therefore the runway parcel lies entirely southeasterly of the B and C reference points.

Beyond the textual features of the 1970 lease, we may consult the circumstances of its formation to assist in the resolution of an ambiguity, *Cooley* v. *Bettigole, supra* at 520-521, so long as they are undisputed. *USM Corp.* v. *Arthur D. Little Sys., Inc.,* 28 Mass. App. Ct. at 116. *Gross* v. *Prudential Ins. Co. of America, Inc.,* 48 Mass. App. Ct. at 121-122. Two circumstances are illuminating.

At the time of the execution of the lease, the runway parcel contained 1,250 feet and the Frothingham parcel the remaining 500 feet of the paved runway. The resulting compelling inference is that the phrase "necessary and convenient for runways" included the surface of 1,250 feet of the existing runway in the centrally located runway parcel.

Another source of clarification of appendix A appears in the initial letter from API's counsel to the Little sisters' counsel. In correspondence of April 29, 1966, API's counsel reported the purchase of the airport business operation from Frothingham and broached the subject of a lease:

"The gentlemen in question [Hordon and associates]

were given to understand that your clients [the Little sisters] are the owners of certain land which has formerly been leased to the proprietors of the Airport. It is my understanding that this lease has expired, or will very shortly, and the present Corporation [API] are most desirous of obtaining a lease from your clients, as it is imperative to the continued operation of the airport. . . . [I]t is their sincere hope that the Misses Little will award them a long-term lease at a reasonable rate of return, so that they may achieve the position of growth and security with respect to the airport."

This correspondence opened the negotiation of the original short-term lease of 1966 (also containing the lease sketch and notations, but now lost). It is undisputed that as of 1966 the airport runway consisted of the 500 feet in the Frothingham parcel and the 1,250 feet in the runway parcel. The correspondence shows that API wished to succeed to an existing lease "imperative" or necessary to the "continued" operation of the airport. In 1966 and thereafter, that lease would necessarily have included the runway parcel as a permissive use.[6] As a practical matter, a lease for the operation of the airport could not feasibly have omitted the runway parcel from its coverage.

4. *The conduct of the parties.* Even if the interpretation of the lease were not decisive, we may test the claim of adverse possession by its essential criterion: whether the conduct of the possessor was so continuously and openly adverse or hostile as to warn the owner of a challenge to its title. *Ottavia* v. *Savarese*, 338 Mass. at 333. That determination requires a realistic appraisal of the character and use of the disputed land, and of the relationship and conduct of the contesting parties.[7] Acts of

---

[6] The motion judge properly weighed the opening letter of API's counsel in her interpretation of the lease and the inclusion of the runway parcel within it as a permissive use.

[7] See, e.g., *LaChance* v. *First Natl. Bank & Trust Co. of Greenfield*, 301 Mass. 488, 490 (1938) ("The nature and extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put"); *Kendall* v. *Selvaggio*, 413 Mass. at 624 ("A judge must examine the nature of the occupancy in relation to the character of the land"); *Totman* v. *Malloy*, 431 Mass. at 145 ("Whether a use is nonpermissive depends on many circumstances, including the character of the land, who benefited from the use

256                                  70 Mass. App. Ct. 246 (2007)

Air Plum Island, Inc. *v.* Society for the Preservation of New England Antiquities.

possession of a character "few, intermittent and equivocal" do not constitute adverse possession. *Kendall* v. *Selvaggio*, 413 Mass. at 624, quoting from *Parker* v. *Parker*, 1 Allen 245, 247 (1861).

As the motion judge observed, the summary judgment record substantiates a cooperative long-term commercial tenancy. It does not support the existence of a genuine issue of adverse or hostile possession. API's opening communication in 1966 cast API as an applicant for a continuing commercial tenancy secured by an agreeable lease. The 1970 lease structured a relationship of common interests. In particular it made the annual rent a percentage of sales and revenues at the airport.

Throughout its tenancy API acted compliantly with the terms of the lease. It paid all real estate taxes upon the entire airport landscape. It responded to requests from the Little sisters and SPNEA, respectively, in 1982 and 1986, to pay increased or adjusted real estate taxes. It added, subtracted, and replaced hangar structures and ancillary buildings on both the airport and runway parcels, as authorized by the lease. After the blizzard of 1978, it repaved the entire runway, again as allowed by the lease. Beyond the terms of the lease, API confirmed its status as a tenant in 1984 and 1985 in support of SPNEA's application to the town of Newbury for reclassification of land including the runway parcel for tax purposes.

Finally, as an obvious practical matter, through the decades of the tenancy, API's indivisible use of the single runway spanning the length of the airport effectively masked from SPNEA's notice any distinction between the permitted use of the airport parcel and the allegedly nonpermissive use of the contiguous runway parcel. These circumstances accumulate strongly against any issue of open and adverse possession. Nothing in this lengthy pattern of conduct contradicted the terms of the lease or otherwise alerted a reasonable-minded landowner of a danger to its title.

*Conclusion.* The motion judge correctly analyzed the terms of the lease and the conduct of the parties. They support the conclusion that API's use of the runway parcel was permissive and not

---

of the land, the way the land was held and maintained, and the nature of the individual relationship between the parties claiming ownership").

adverse. No genuine issue of material fact prevented the entry of summary judgment for the record owner.

*Judgment affirmed.*

Air Plum Island, Inc. *v.* Society for the Preservation of New England Antiquities.

APPENDIX.

APPENDIX A
to
LEASE

AMELIA W. LITTLE and AGNES L. LITTLE
to
AIR-PLUM ISLAND, INC.

dated December  8  , 1970

NOTES

1.  Scale, bearings, and distances are approximate.

2.  Size and location of building approximate.

3.  Point "A" on the above sketch is a stone bound on the Plum Island Turn-
    pike demarcating the Newburyport-Newbury line.

4.  The sketch may not reflect precisely the location of those boundaries
    indicated by dotted lines. However, the demise includes that land of the
    Lessors/which is necessary or convenient for runways, taxiways, ap-
    proach zones, and other related purposes, whether the same lie within
    or without the dotted boundaries.

                                    AIR PLUM ISLAND, INC

                            by _____

LAW OFFICES
BEIT & WELLS
84 STATE STREET
NEWBURYPORT, MASS.