Hely, Charles J., J.
A. Introduction
The plaintiff claims that she has acquired ownership by adverse possession of a piece of land on the defendant’s lot. The case was tried to the court without a jury. Based on the more credible evidence and the reasonable inferences, the court finds that the plaintiff has not established that she has acquired ownership of the disputed area by adverse possession.
B. Adverse Possession Principles
A party claiming title to land through adverse possession “must establish actual, open, exclusive, and nonpermissive use for a continuous period of twenty years.” Totman v. Malloy, 431 Mass. 143, 145 (2000). *495 The “guiding principle behind the elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of properly rights." Id.
The element of nonpermissive use “has been referred to interchangeably in the case law as ‘hostile,’ ‘adverse,’ or ‘under a claim of right.’ ” Id. The “essence of nonpermissive use is lack of consent from the true owner.” Id. “Whether a use is nonpermissive depends on many circumstances, including the character of the land, who benefited from the use of the land, the way the land was held and maintained, and the nature of the individual relationship between the parties claiming ownership.” Id.
The burden of proof is on the party asserting an adverse possession claim, in this case the plaintiff. Id.; Air Plum Island, Inc. v. Society for Preservation of New England Antiquities, 70 Mass.App.Ct. 246, 252 (2007).
The “state of mind of a claimant is not relevant to a determination whether the possession of land is non-permissive.” Totman v. Malloy, 431 Mass. at 146.
C. The Plaintiffs Lot and the Disputed Area on the Defendant’s Land
Exhibit 12 shows the plaintiffs lot and the disputed area of the defendant’s lot that is claimed by the plaintiff. The plaintiff acquired title to her lot by a 1972 deed. Ex. 1. The lot deeded to the plaintiff in 1972 is the lot shown on the east side of Exhibit 12. Exhibit 12 shows the plaintiffs real estate office and parking lot marked on her lot. The lot that the plaintiff acquired by deed is about 5,800 square feet. Ex. 1. The plaintiffs lot is seventy-five feet wide on the south frontage along Route 6. Her lot is one hundred feet deep along her west property line. Ex. 12.[1]
The area claimed by the plaintiffs adverse possession claim is primarily the area abutting the plaintiffs west property line as shown on Exhibit 12. The disputed area is on land owned by the defendant. The primary disputed area is fifty-one feet wide along Route 6 on the south, one hundred feet deep along the plaintiffs west property line, and seventy-four feet deep along the old hedgerow on the west side of the disputed area. Ex. 12. The disputed area also contains a small triangle, about fifteen feet wide, along the plaintiffs north property line at the northwest corner. Ex. 12. The disputed area claimed by the plaintiff is about 4,562 square feet. Acquiring the disputed area would almost double the plaintiffs present lot size.
The bulk of the disputed area is open and grassy with a few trees. A tall, overgrown hedgerow marks the west edge of the disputed area.
The southeast corner of the disputed area was paved over by the plaintiff some years back in a westward expansion of her office parking lot. Ex. 12.[2]
D. The Plaintiffs Use of the Disputed Area
The credible evidence in this case does not persuade the court that the plaintiff has established actual, open, exclusive and nonpermissive use of all or any portion of the disputed area for twenty continuous years.
The plaintiff and her husband have been operating a real estate office on her lot since about 1972. For more than twenty years before filing suit, the plaintiff and her husband had the grass cut on the unpaved part of the disputed area. They did so to maintain a good appearance on this open area because it was next to their real estate office and parking lot. People who worked at the plaintiffs real estate office picked up litter and debris on the disputed area for more than twenty years.
The plaintiff also planted a spruce tree near the middle of the disputed area. For more than twenty years, the plaintiff and her husband have kept a two-post, Upper Cape Realty sign, about six feet by six feet, on the unpaved part of the disputed area. The plaintiffs sign is next to the Route 6 sidewalk and a few feet west of the west edge of the paved parking surface. See Ex. 21C.
Over the years the plaintiff and her husband have also had an occasional cookout for employees on the disputed area. They have also occasionally had business meetings when office visitors parked on the disputed area. The plaintiff had a fire in the interior of her office building in December 1977. For about a year after the fire, the plaintiff kept a temporary office trailer on the disputed area.[3]
The court finds that the combined activities of the plaintiff on the disputed area, including the asphalt paving described below, fall short of establishing a continuous, actual, exclusive and nonpermissive use of the disputed area.
The plaintiffs use of the unpaved part of the area has primarily been cutting the grass in the summer months and keeping the sign on the unpaved area near their own west lot line. The plaintiff has not shown by reliable evidence that the sign and the grass cutting were exclusive, nonpermissive uses.
An important factor in evaluating an adverse possession claim is “whether the conduct of the possessor was so continuously and openly adverse or hostile as to warn the owner of a challenge to its title.” Air Plum Island, 70 Mass.App.Ct. at 255. The plaintiffs cutting of the grass and their placement of the sign on the unpaved area near their own driveway were not an open assertion by the plaintiff of a claim to a right to use the unpaved area to the exclusion of the defendant’s predecessors, the Tucys. In other words, the plaintiffs limited uses of the unpaved area were not exclusive.
Considering the totality of the evidence, the occasional cookouts and the occasional parking of a few *496 cars on the unpaved area and the temporary trailer were too infrequent, too limited and too indefinite in area. These uses do not add significant factual weight to the plaintiffs claim that her use of the unpaved area was adverse, exclusive and continuous. Acts of possession “of a character ‘few, intermittent and equivocal’ do not constitute adverse possession.” Id. at 255-56.
The plaintiffs use of the paved part of the disputed area was more significant and continuous than her use of the unpaved part. The evidence is unclear, however, on when the plaintiff made her asphalt encroachment onto the land of the defendant’s predecessor. The evidence is also unclear on the extent to which the defendant’s predecessor gave permission to the plaintiff to have a paved or unpaved parking area encroach onto the disputed area.[4]
With respect to the paved part of the disputed area, the court finds that the plaintiff has not shown by reliable evidence that she paved over, without permission, the corner strip on the disputed area twenty or more years before she filed her adverse possession claim in this case.
The plaintiff filed suit on February 3, 2004. The plaintiff decided to file this action a short time earlier when workers for the defendant started to take down the plaintiffs sign on the disputed area and the plaintiffs mailbox. By February 2004, the defendant and his predecessor were openly asserting a right to end any use of the disputed area by the plaintiff. If the plaintiffs asphalt encroachment on the disputed area did not begin before February 1984, the plaintiff has not shown that the asphalt encroachment continued for twenty years.[5]
The Sykes December 29, 2003, plan, Exhibit 12, reliably shows the encroachment of the plaintiffs asphalt parking lot onto the defendant’s land as of December 2003. The paved part of the disputed area is a strip running along the south third of the plaintiffs west property line. The paved strip on the defendant’s land varies in width from about four feet at Route 6 on the south to about nine feet at the north end of the strip. The length of the disputed paved strip varies from about thirty feet to about thirty-eight feet.[6]
The evidence is unclear on when the plaintiff first put asphalt paving on her own lot. The evidence is unclear on when the plaintiff extended the paving over her west line onto the defendant’s land. The plaintiff, Nancy Angus, testified that she thought that the parking lot paving was on her lot when she first bought her lot in 1972. I find from the Exhibit 14 aerial photograph and the testimony of Patrick Tropeano that in the early years of the plaintiffs ownership her parking lot was unpaved sand or gravel.
Some reliable evidence on the timing of the plaintiffs asphalt encroachment came from the June 8, 1981, Hayward-Boynton & Williams plan, Exhibit 22, and the testimony of John Churchill, Jr. Mr. Churchill, the defendant’s engineer, gave reliable testimony interpreting the 1981 Hayward-Boynton & Williams plan. In June 1981, the Hayward-Boynton & Williams engineers set a visible concrete bound marker (“C.B (set)”) at the boundary between the southwest corner of the plaintiffs lot and the southeast corner of the land of C. Paul Tucy. Ex. 22. C. Paul Tucy was a predecessor in title to the defendant. If the plaintiffs lot had paving on it in June 1981, the plaintiffs paving did not cover over the visible concrete bound marker that Hayward-Boynton & Williams installed at that time.
I find from the evidence and reasonable inferences that there was no asphalt encroachment from the plaintiffs land onto the Tucy land prior to June 1981. As of June 1981, the plaintiffs asphalt did not extend westward beyond the visible concrete bound set by Hayward-Boynton & Williams at the southwest corner of the plaintiffs lot.
In December 2003, the plaintiffs surveyor, Robb Sykes, prepared a survey plan of the plaintiff s lot and the disputed area on the defendant’s land. Ex. 12. The Sykes 2003 plan accurately shows the current asphalt parking area including the portion of the asphalt that encroaches westward onto the defendant’s land. The Sykes 2003 plan shows two stone bounds and one concrete bound that Mr. Sykes found on the east and north sides of the plaintiffs lot. Mr. Sykes did not find and did not put on his 2003 plan the concrete bound that Hayward-Boynton & Williams set at the southwest corner of the plaintiffs lot in 1981. This is because the plaintiff paved over the southwest corner bound when she expanded her parking area to the west at some point between 1981 and 2003.
The defendant’s engineer, Mr. Churchill, did find the southwest corner concrete bound when he prepared his November 5, 2007, plan of the site. Ex. 13. Concrete bounds of this nature usually contain steel reinforcing bar (“rebar”). Mr. Churchill’s metal detector reliably told him that the southwest concrete bound was in place but paved over with asphalt at the time of his November 2007 plan. Although he detected the bound in the right place, Mr. Churchill did not mark the paved-over concrete bound on his plan.
Robert Grady is a former employee of the Upper Cape Realty business owned by the plaintiff and her husband. Between 1983 and 1987, Mr. Grady worked for Upper Cape Realty at the plaintiffs office lot involved in this case. Mr. Grady was a real estate salesperson and broker at the time. He also regularly cut the grass and picked up debris on the disputed area. The spruce tree was not on the disputed area when Mr. Grady started there in 1983.
When Mr. Grady worked at the plaintiffs office, parking lot paving was present but the paving extended northward only as far as the front of the office. Mr. Grady regularly parked his car next to the west side of the plaintiffs office. At that time, the parking area was unpaved gravel in the area on the west side of the plaintiffs office.
*497 At some time after Mr. Grady left in 1987, the plaintiff significantly expanded the paved portion of her parking area. The paved area expansion included the area on the west side of the office that previously was gravel. It is likely that the paved area expansion after Mr. Grady left also included the plaintiffs first paved encroachment onto the disputed area.
The reliable evidence has not established that the plaintiffs asphalt encroachment existed, without permission, before February 1984. The plaintiff has not met her burden of proving by reliable evidence that her encroachment existed, without permission, for twenty years before the plaintiff entered this action in February 2004.
E. Order
A declaratory judgment will enter declaring that the plaintiff has not acquired ownership by adverse possession of any portion of the land in Wareham owned by the defendant.

The lot now owned by the plaintiff was at one time a rectangle, seventy-five feet wide along Route 6, and one hundred feet deep. Ex. 1, 12. At some point, probably before 1972, the Commonwealth acquired the northeast corner of the lot now owned by the plaintiff. Ex. 1, 12.

The court in this case admitted as background evidence the plaintiffs testimony that she believed that her deeded lot included the disputed area. The court finds that either the plaintiff or her husband, as the owners of a multi-office real estate business, knew or reasonably should have known from their deed that their lot’s frontage on Sandwich Road, Route 6, was “seventy-five (75) feet,” not 126 feet. The court has given no evidentiary weight to the plaintiffs testimony about her belief that her deeded lot included the disputed area.

The plaintiff has kept a mailbox a few feet west of their west lot line, between the sidewalk and the Route 6 pavement. The mailbox or one like it has been there for more than twenty years. The mailbox has always been on state highway land, not on the defendant’s land.

Brock Tucy’s interrogatory answers 8 and 13 (Ex. 26) were erroneously admitted into evidence because they were offered by the defendant, not by a party opponent. Massachusetts Guide to Evidence §801(d)(2) (2008); see Mass.R.Civ.P. 33(b). The court now strikes from the evidence Brock Tucy’s interrogatory answers 8 and 13 and the deposition testimony offered by the plaintiff to impeach the credibility of the interrogatory answers. These items have not been considered by the court as evidence.

In August 2003, the defendant filed with the Wareham Planning Board a site plan review application for construction of a commercial building on his land that includes the disputed area. The defendant’s land is in a commercial zoning district. The defendant sent notice of his application to the abutters, including the plaintiff, of the Planning Board application and hearing. The Planning Board filed a decision on March 2004, approving the defendant’s site plan.
On April 26, 2004, the court issued a temporary restraining order restraining the defendant’s predecessor from taking any action with respect to the hedgerow, picket fence and lawn on the disputed area that would interfere with the plaintiffs use of the disputed area. A preliminary injunction later issued in the same terms.

Exhibit 12 isareduced size copy ofthe original 12-29-03Sykes plan. Because of the size reduction in copying the plan, the onginal scale stated on the plan is not accurate for the reduced copy.