DISSENTING OPINION
Coven, J.
Because I read the lease provisions at issue more narrowly than the majority or the trial judge, I respectfully dissent.
In Section IV. B. of the standard lease of the Chelsea Housing Authority (“Authority”), the tenant is obligated to report a change of income of 10% within thirty days of its occurrence. A failure to do so would serve as a basis for eviction. Section XII. B. 9. This provision should necessarily apply to any change of income of 10% that is of an ongoing basis, i.e., more than just a temporary or episodic change in income status as occurred in this case. The provision implies an ongoing change in income, not merely a change of income due to a temporary change in the number of hours worked or a singular increase in tips received. Tenants who happen to be in low wage, often service industry, jobs may have their wages fluctuate. To require a reporting each time more or fewer hours are worked resulting in a change of income of 10% would place a tremendous burden on both the tenant and the housing authority, which could be responsible for reviewing temporary changes for hundreds of working tenants whose incomes may vary month to month.
Public housing is the shelter of last resort for many poor and near-poor families. To subject them to the risk of eviction because their incomes fluctuate month to month is to create a compelling reason to interpret the lease provision to require more than a temporary change, but a change of a more substantial or permanent nature. This is consistent with the principle that a lease provision must be construed narrowly against the drafter, in this case the Authority. Charles E. Burt, Inc. v. Seven *12 Grand Corp., 340 Mass. 124, 127-128 (1959); Air Plum Island, Inc. v. Society for Preservation of New England Antiquities, 70 Mass. App. Ct. 246, 253 (2007). One example of the trial courf s application of the lease provision demonstrates its conflict with the goals of providing affordable housing to the poor and near poor. At the time of the annual recertification, a tenant may be earning $300.00 a month in part-time employment. Ten months later, she may get a temporary increase in hours worked during the holiday season, causing her income to increase to $350.00 for one or two months. If this tenant forgets her base income at the time of her recertification ten months earlier or otherwise does not recognize that her income has temporarily increased by 10% for one month, she is at risk of eviction. Certainly, this result was not contemplated by either the drafters of the lease provision or the Federal government that approved of it.
I would interpret these lease provisions to apply the reporting requirement only when a tenant has a change of income of a more permanent nature, such as a new job, promotion, raise in salary, or ongoing increases in hours assigned, and not where there is only a small temporary change in income.[4]

 This narrow reading is also consistent with the fact sheet prepared for tenants by the United States Department of Housing and Urban Development, which states:
Annualization of Income
If it is not feasible to anticipate a level of income over a 12-month period (as in the case of seasonal or cyclic income), or the PHA believes that past income is the best available indicator of expected future income, the PHA may annualize the income anticipated for a shorter period, subject to a redetermination at the end of the shorter period.
Office of Pub. & Indian Hous., U.S. Dep’t of Hous. & Urban Dev., Fact Sheet: “How Your rent is Determined” (2002). See 24 C.F.R. §5.609(d), as amended at 65 Fed. Reg. 16692 (2000).